[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
United States Court of Appeals
For the First Circuit

No. 98-1328

IKBAL GAIBI-RODR GUEZ,

Plaintiff, Appellant,

v.

EMERGENT GROUP, INC., ET AL.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Prez-Gimnez, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Reavley*, Senior Circuit Judge.

Fernando L. Gallardo, with whom Woods & Woods was on
brief for appellant.

Jaime E. Toro-Monserrate, with whom Ral M. Arias, and
McConnell Valdes were on brief for appellees.

October 16, 1998



*Of the Fifth Circuit, sitting by designation. BOWNES, Senior Circuit Judge. The sole issue in this
case is whether the trial court erred when it dismissed this action
for breach of contract and fraud. We affirm the district court
opinion, which we have reviewed de novo.
I.
In the latter part of 1995, plaintiff-appellant Ikbal
Gaibi Rodrguez ("Gaibi") and defendant-appellees Emergent Group,
Inc., Emergent Mortgage Corp., and Carolina Investors, Inc.
(collectively, "Emergent"), entered into negotiations to establish
a strategic alliance to provide one another with certain financial
services. On December 5, 1995, the parties executed a
Confidentiality Agreement to govern their discussions. That
agreement provided, inter alia, that "[n]one of the Parties shall
have any duty of obligation whatsoever to proceed with any
transaction unless and until a definite, written agreement has been
mutually approved, executed, and delivered to both parties." 
Negotiations over the details of the venture continued. 
At some point, the negotiations centered on the possible
creation of a corporation preliminarily called the "Emergent
Lending Puerto Rican Company" or the "Puerto Rico Lending
Institution" that would then employ Gaibi. On June 1, 1996,
Gaibi allegedly discontinued other business endeavors and attended
training sessions at Emergent's offices for three weeks and
continued to work on aspects of the venture. On June 20, 1996,
Emergent informed Gaibi that it had decided to withdraw from its
dealings with him. The corporation was never created. Gaibi was
reimbursed $2,132.24 "for the expenses [he] incurred while visiting
[Emergent]." (7/9/96 letter from Donald L. Batts to Gaibi). In
addition, he was paid "three months salary ($25,000) for the time
and effort [he] extended working on developing the Emergent Lending
Puerto Rican company." This was to "help cover [his] expenses and
provide for the transition into [his] new employment." 
II.
This lawsuit followed. In his complaint, Gaibi alleged:
(1) breach of the Confidentiality Agreement because defendants
failed to develop the Puerto Rican Lending Institution and misused
their relatively more substantial "economic wealth"; (2) breach of
an alleged Development Agreement; (3) breach of good faith and fair
dealing by fraudulently refusing to develop the corporation; and
(4) breach of an alleged Employment Agreement. Defendants moved to
dismiss for failure to state a claim or, in the alternative, to
transfer the case to the District of South Carolina. 
The trial court granted the motion to dismiss. It
dismissed the Confidentiality Agreement claim because Gaibi did not
allege any facts suggesting that defendants misused the information
they gained during negotiations or otherwise failed to negotiate in
good faith; and dismissed the remaining claims because it found no
written Development or Employment Agreements. The court dismissed
the fraud claim on the ground that the complaint contained only
conclusory assertions but no facts upon which a finding of fraud
could be based.
III.
On appeal, Gaibi contends that: (1) there had to have
been an Agreement because he attended training sessions, was paid
three months' salary, and had begun working for the Emergent
Lending Puerto Rican Company, which was "developed, at least de
facto"; (2) the parties did "proceed with [a] transaction," thereby
rendering the Confidentiality Agreement's requirement for a written
agreement inapplicable; and (3) the court erred by failing to
convert the motion to dismiss to one for summary judgment.
As to his breach of contract claims, although Gaibi
submitted several letters which he contends represent codified
agreements, none of them are. See K-Mart v. Davis, 756 F. Supp.
62, 68-69 (D.P.R. 1991). For example, the letter dated April 8,
1998 from Keith B. Giddens of Emergent to Gaibi does not contain
the "terms and conditions of [his] Employment Contract," as Gaibi
contends, but is simply evidence of ongoing negotiations: the
letter employs conditional language such as, "If I am correct, you
will own . . ." and "Other provisions will have to include . . . ." 
Similarly, the document Gaibi calls evidence of his acceptance of
the purported Employment Agreement (4/16/96 letter from Gaibi to
Giddens) is no more than his agreement to the "basic concept" of
the current proposal and includes further suggestions by Gaibi. In
short, Gaibi simply cobbles together various circumstances that may
or may not be consistent with the existence of a contract, but
which in light of the Confidentiality Agreement's demand for a
written agreement are clearly insufficient to form a contractual
meeting of the minds. 
That Gaibi voluntarily forewent other business
opportunities, and that Emergent compensated him for the time spent
on the project and trained him in the hope that the project would
materialize, does not satisfy this contractual requirement. 
Likewise, we find no merit to Gaibi's argument that the parties had
explicitly waived or modified the terms of the Confidentiality
Agreement.
The court's dismissal of the fraud claim is also
unassailable. None of the alleged facts suggest any intent to
defraud Gaibi or negotiate in bad faith. See Fed. R. Civ. P. 9(b). 
And Gaibi's own complaint suggests that negotiations simply did not
pan out.
Gaibi's claim that the court should have converted the
motion to dismiss to one for summary judgment requires only brief
comment. He never asked for such a conversion and the court
considered only documentary evidence that was crucial to his
claims, i.e., the Confidentiality Agreement and all documents
submitted by plaintiff which purportedly represented Development or
Employment Agreements but which were clearly correspondence
exchanged during and as part of the negotiations. There was no
reason for the court to sua sponte convert the motion for dismissal
to one for summary judgment. See Watterson v. Page, 987 F.2d 1, 3
(1st Cir. 1993); Fed. R. Civ. P. 12(b).
Affirmed. Costs on appeal awarded to appellee.