Louis L. VINAGRO, Jr., and Louis L. Vinagro, III, Plaintiffs,

v.

Jan H. REITSMA, in his capacity as Director of the Rhode Island Department of Environmental Management, Sheldon Whitehouse in his capacity as Attorney General of the State of Rhode Island,[1] James Ashton, in his individual capacity and in his capacity as an agent or employee of the Rhode Island Department of Environmental Management, Donald Squires, in his individual capacity and in his capacity as an agent or employee of the Rhode Island Department of Environmental Management, and John Does one through Fourteen, Defendants.

No. C.A. 02–121–L.

United States District Court, D. Rhode Island.

May 6, 2003.

---

1.  In January, 2003, Patrick C. Lynch succeeded Sheldon Whitehouse as Rhode Island's Attorney General.

J. Richard Ratcliffe, Esq., Ratcliffe, Burke & Harten, LLP, Providence, RI, for Plaintiffs.

Rebecca Tedford Partington, Attorney General's Office, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

Defendants ask this Court to trash plaintiffs' amended complaint, while plaintiffs plead for leave to recycle it a second time. For the reasons that follow, the Court declines to designate the entirety of the plaintiffs' lawsuit for the jurisprudential circular file, and will permit them to reproduce the complaint in accordance with this disposition.

## BACKGROUND

The latest episode in the contentious relationship between plaintiffs Louis Vinagro, Jr. ("Junior"), his son Louis Vinagro, III. ("Vinagro III") and Rhode Island's Department of Environmental Management ("DEM") arises out of a series of inspections or intended inspections of the Vinagros' property over the course of more than a year.

Plumbing the depths of the amended complaint and supplementary pleadings, where appropriate, reveals the following facts. DEM employs defendant James Ashton as a Principal Environmental Scientist and defendant Donald Squires as an Engineering Technician IV. On September 22, 2000, Ashton and Squires entered onto property owned by Junior at 698 Central Avenue, Johnston, Rhode Island, at which he resides. The DEM agents did not have a warrant to search the property. There, in connection with a criminal investigation into alleged illegal waste dumping on the site, and under the auspices of Rhode Island General Laws section 42–17.1–2(t), they searched an unspecified area near Junior's dwelling and seized a small amount of material.

Significantly, earlier that same year, in February of 2000, upon discovering DEM's intent to conduct a similar search of other residential property he owned in Foster, Rhode Island, Junior had filed a complaint in Rhode Island Superior Court, sitting in Providence. That complaint requested an injunction prohibiting DEM from searching the Foster property without a warrant and a declaration that section 42–17.1–2(t) violated the Fourth Amendment to the United States Constitution. On August 31, 2000, the Superior Court dismissed the Foster suit after DEM informed the court that it no longer intended to search the property.[2]

More than a year later, on December, 12, 2001, DEM conducted two more searches, this time after securing search warrants for Junior's Johnston residence and for property owned by Vinagro III at Pole 60½ Shun Pike in Johnston. DEM evidently suspected defendants of dumping certain types of solid waste, specifically construction and demolition debris, on both properties, in violation of Rhode Island law. Following the December 2001 searches, defendants allegedly carted away a significant amount of material, seized at least in part by using a backhoe, for testing.

Junior commenced this action by filing an initial complaint requesting injunctive relief in the Superior Court on December 11, 2001,[3] and an amended complaint, adding Vinagro III as a plaintiff and claiming entitlement to damages, on February 6, 2002. Defendants removed the case to this Court on March 7, 2002. Named in the suit are Jan H. Reitsma, Director of the DEM, in his official capacity; Rhode Island's Attorney General, then Sheldon Whitehouse, now Patrick C. Lynch, in his official capacity; Ashton and Squires, in both their official and individual capacities; and fourteen as yet unidentified John Does. All defendants (with of course, the exception of the unnamed and unserved John Does) have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

---

**2.** According to the amended complaint, on September 26, 2000, just four days after the search of Junior's Johnston property at issue here, DEM again sought from the Superior Court authorization to search his Foster property pursuant to § 42–17.1–2(t). The amended complaint quotes at length Justice Savage's August 3, 2001 denial of DEM's request on the ground that the statute could not be applied constitutionally in such a manner.

**3.** The precise date of the December, 2001 search is not entirely clear. The amended complaint (and the proposed second amended complaint) allege that the search occurred on December 12. However, Junior filed the initial complaint on December 11, and it alleged that excavation was occurring on his property on that date. What's more, the Superior Court apparently did enjoin, on December 11, further excavation at the site. For present purposes, however, the discrepancy is immaterial.

## DISCUSSION

### I. *Motion to Dismiss*

#### A. *Rule 12(b)(6) Standard*

A court ruling on a motion to dismiss construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir.1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990).

Simplicity and logic counsel dealing with the counts detailed by the amended complaint in reverse order.

#### B. *Count III—Declaratory Judgment*

Plaintiffs have asked the Court to deem section 42–17.1–2(t)(1993) a violation of both the Fourth Amendment to the United States Constitution and Article One, Section Six of the Rhode Island Constitution.

When plaintiffs filed suit, the statute gave the director of the DEM the power "to enter, examine or survey at any reasonable time such places as the director deems necessary to carry out his or her responsibilities under any provision of law." R.I. Gen. Laws § 42–17.1–2(t)(1993).[4] That provision, according to plaintiffs, purported to authorize warrantless searches of private property by government officials, in flagrant violation of both the state and federal constitutions.

Were that version of the statute still operative, count III might present a live controversy. In the intervening months since these motions were heard and argued, however, a revised section 42–17.1–2(t) became effective. The legislature, perhaps recognizing the potential infirmities of the prior subsection (t), amended it to require the DEM, in pursuit of criminal investigations, "to seek a search warrant from an official of a court authorized to issue warrants, unless a search without a warrant is otherwise allowed or provided by law." R.I. Gen. Laws § 42–17.1–2(t)(effective January 1, 2003).[5]

Without definitively passing on the merits or defects of the new legislation, it does appear to cure the ills diagnosed by the Vinagros in the instant matter. In any

---

4. **42–17.1–2. Powers and duties. [Effective until January 1, 2003].**— The director of environmental management shall have the following powers and duties:

    . . . .

(t) To enter, examine or survey at any reasonable time such places as the director deems necessary to carry out his responsibilities under any provision of law. . . .

5. **42–17.1–2. Powers and duties. [Effective January 1, 2003].**— The director of environmental management shall have the following powers and duties:

    . . . .

(t) To enter, examine or survey at any reasonable time such places as the director deems necessary to carry out his responsibilities under any provision of law subject to the following provisions:

(1)For criminal investigations, the director shall, pursuant to chapter 5 of title 12, seek a search warrant from an official of a court authorized to issue warrants, unless a search without a warrant is otherwise allowed or provided by law. . . .

event, the abrogation of the statute that was operative in 2000 makes the present constitutional challenge moot, mandating dismissal of Count III of the amended complaint. *See Powell v. McCormack* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)("Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.")(internal quotation marks omitted).

### C. Count II—Section 1983

The amended complaint also alleges that Ashton, Squires and the John Doe defendants violated Junior's right to due process of law and to be free from unreasonable searches and seizures, making them liable for damages pursuant to 42 U.S.C. section 1983 (2000). Defendants have responded by asserting the doctrine of qualified immunity, which in some circumstances protects government officials from lawsuits stemming from actions taken in the course of their duties.

*Qualified Immunity*

Generally, "[q]ualified immunity shields government officials wielding discretionary powers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Amsden v. Moran,* 904 F.2d 748, 751 (1st Cir.1990)(*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ The preceding is reducible to three sequential inquiries: (1) whether the plaintiff has alleged a deprivation of a federal constitutional or statutory right; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a reasonable government official, armed with the knowledge that the defendants had at the time, would have been aware that they were violating the aforementioned right or rights. *See Kelley v. LaForce,* 288 F.3d 1, 6 (1st Cir.2002); *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 20 (1st Cir. 2001).

The third prong of that test merits emphasis. A qualified immunity defense is only available to a defendant who could not have been reasonably expected to know that he was violating a clearly established constitutional right. *See Amsden,* 904 F.2d at 752. That standard is an objective one, but is fact-specific insofar as it takes into account a defendant's cache of knowledge at the time of the alleged violation.

■ Because qualified immunity is, as the phrase implies, more than just an affirmative defense to liability but instead an immunity to lawsuits and their attendant burdens, early resolution of its availability is encouraged. *See Swain v. Spinney,* 117 F.3d 1, 10 (1st Cir.1997). Where, however, factual issues cloud the inquiry, cloaking defendants with immunity at an early stage of litigation is inappropriate. *See Kelley v. LaForce,* 288 F.3d at 7 (*quoting Swain,* 117 F.3d at 10).

*Violation of Clearly Established Right*

Applying the instant facts to the first prong of the test requires little deliberation: the Vinagros have asserted that they were subjected to unreasonable searches and seizures and were deprived of property without due process of law. More particularly, and most relevant to this motion, Junior alleges that the September 22, 2000 search and seizure were unreasonable because they were warrantless.[6] As such, the amended complaint alleges constitu-

---

**6.** The amended complaint (unlike the proposed second amended complaint) does not implicate Ashton or Squires in the December 2001 searches.

tional violations at a sufficiently specific level to satisfy the initial step of the qualified immunity analysis.

Turning to the second inquiry, it is indisputable that the Fourth Amendment to the federal constitution clearly establishes the right to be free from unreasonable searches and seizures. Controlling case law cautions, however, that "the question is not whether some right has been established clearly at a highly abstract level ... [r]ather, the question is whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violate[d] that right.'" *See Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir.1998)(*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ More specifically, then, in the context of Fourth Amendment jurisprudence, unreasonable searches and seizures are, with some exceptions, those conducted without a warrant. *See Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Junior has alleged that Ashton and Squires, without a warrant and in the absence of any exigent circumstances that would justify a search or seizure, entered onto the curtilage of his residential property and seized material in furtherance of a criminal investigation. That claim suffices to allege a violation of a clearly established constitutional right for purposes of a motion to dismiss.

*Objective Reasonableness of the Search*

The availability of a qualified immunity defense to these defendants turns, then, on whether or not a reasonable DEM official standing in defendants' shoes on September 22, 2000 should have recognized that their entrance onto Junior's property vio-

lated his right to be free from unreasonable searches and seizures.

Defendants claim that they are entitled to immunity because section 42–17.1–2(t) authorized their actions. Furthermore, they add, the Rhode Island Supreme Court had at that point held that section 42–17.1–2(t) passed both federal and state constitutional muster in *Keeney v. Vinagro*, 656 A.2d 973, 975 (R.I.1995). That combination of statutory authority and judicial imprimatur made it eminently reasonable, the argument goes, for Ashton and Squires to believe they were permitted to conduct the September 22 search.

■ As the Vinagros point out, however, *Keeney* is of dubious comfort to the defendants, since it upheld section 42–17.1–2(t) as constitutional only insofar as it applied to pervasively regulated businesses, a recognized exception to the warrant requirement. *See New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). *Keeney* certainly did not hold that DEM officials could search residential property at will, without a warrant, in the absence of any such exception. And while government officials are not expected to forecast the development of constitutional law, *see Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 22–23 (1st Cir.2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)), and should not be discouraged from carrying out presumptively legitimate legislative enactments, neither are they permitted to blindly implement statutes that tread over guaranteed rights. *See Dittman v. State of California*, 191 F.3d 1020, 1027 (9th Cir.1999).

■ Defendants' reliance on section 42–17.1–2(t) and *Keeney* is also questionable in light of internal guidelines issued by the DEM sometime during the autumn of 2000. Those guidelines, the source of

some contention, require procurement of a warrant by DEM officers before executing a residential search in relation to a criminal investigation. Defendants have asked this Court to take judicial notice of the fact that DEM issued the guidelines subsequent to the September 22 search, on October 12, and that neither Ashton nor Squires had knowledge of the proposed guidelines on the earlier date. Granting that request in this context, however, would be tantamount to finding facts by judicial fiat rather than through the introduction of evidence, and suggests a view of Federal Rule of Evidence 201 that this Court refuses to adopt.

Rule 201 authorizes judicial notice of adjudicative facts that are "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). The version of the DEM guidelines appended by the plaintiffs to their opposition to the motion to dismiss is dated September, 2000 and state that they "are effective immediately." [7] In light of that fact, the date of their effectiveness, not to mention whether in September Ashton and Squires were aware of their potential promulgation, certainly appears to be a subject of dispute at this stage, notwithstanding an affidavit of DEM's Compliance and Inspection Chief to the contrary. In any event, this Court declines the invitation to take notice of the requested facts.

As the foregoing suggests, the extent of Squires' and Ashton's knowledge of the

imminent guidelines could be a significant factor in assessing the reasonableness of their actions on September 22, 2000. That knowledge, in combination with the seemingly overbroad language of the statute and the past dispute over its application, could have led a reasonable DEM officer to conclude that conducting the search and seizing the material from Junior's property violated his Fourth Amendment rights. On the other hand, ignorance of the guidelines could tilt the scales in favor of immunity. This Court expresses no opinion one way or the other, pointing out the alternatives only to demonstrate that at this stage in the litigation the issue is assuredly not ripe for decision.

*Open Fields Exception*

Defendants also perfunctorily advert to the possibility that the warrantless September 2000 search and seizure was justified by the open fields exception to the warrant requirement. The bare pleadings, however, taking into account the appendices to the amended complaint, do not support application of the exception. If discovery adduces sufficient facts that suggest otherwise, the defendants may flesh out the argument in an appropriately documented summary judgment motion.

### D. Count I—Trespass

Defendants contend that their immunity from suit based on the § 1983 claims necessarily extends to Count I's trespass claim as well. Since that is the only ground for dismissal they have offered, and in light of the qualified immunity dis-

---

**7.** Plaintiffs apparently learned of the existence of these guidelines only after the amended complaint had been filed, and appended them to their opposition to the motion to dismiss. Consideration of the guidelines by this Court does not require conversion of the motion into one for summary judgment, as the guidelines are public documents, and the defendants have not disputed their authenticity.

Furthermore, since the plaintiffs have offered the guidelines to undermine the defendants' qualified immunity defense, their use is permissible. *See Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993). Finally, were those reasons insufficient, the proposed second amended complaint references and appends the guidelines, which validates their use in the context of a motion to dismiss. *See id.*

cussion, *supra,* the motion to dismiss Count I must also fail.

In short, far too many factual issues are unresolved to permit the conclusion that Ashton and Squires are entitled to qualified immunity, and since qualified immunity is the only basis presented for dismissal of Counts I and II, defendants' motion must be denied as to those counts.

## II.   Motion to Amend

Rule 15 permits amendment of a pleading at any time before a responsive pleading thereto is filed, and afterwards at any time with leave of court, which leave shall be freely given when justice so requires. *See* Fed.R.Civ.P. 15(a).   Defendants oppose a second amendment of the complaint based on their conclusion that incorporating the proposed changes would still not permit the suit to survive the instant motion to dismiss.   They do state the law correctly: a court can decline to permit amendment if such amendment would be futile.   *See Hatch v. Dep't For Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001).   However, their application of the instant facts to that nugget of law is clearly off the mark.

First and foremost, the preceding discussion of the qualified immunity issue demonstrates that Counts I and II of the first amended complaint are adequate for purposes of Rule 12(b)(6).   Moreover, the proposed second amended complaint includes supplemental allegations, for example the claim that defendants' search of Junior's property in September of 2000 violated the DEM's own aforementioned internal guidelines.   If true, that allegation certainly could have put a reasonable DEM official on notice that a warrantless search was forbidden.   The latest version of the complaint also for the first time ascribes fault to Ashton and Squires for their role in the December 2001 searches.

Further elaboration is unnecessary. Because amendment is not futile, and because defendants have alleged no prejudice that would result from another amendment, plaintiffs shall be allowed to file a second amended complaint.

## CONCLUSION

For the foregoing reasons, the Court hereby: (1) dismisses Count III of the amended complaint as moot; (2) denies defendants' motion to dismiss Counts I and II; and (3) grants plaintiffs' motion to amend the complaint a second time.   As a result of this disposition, the Attorney General is no longer a party to this case, since his presence depends on the survival of Count III. Reitsma remains, but only to the extent that DEM may be liable for trespass.   He has only been sued in his official capacity and as such is impervious to § 1983 claims requesting money damages.   *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Judgment shall not enter until all claims are resolved.

It is so ordered.