USCA1 Opinion

 

 February 9, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1224 VALERIE WATTERSON, ET AL., Plaintiffs, Appellants, v. EILEEN PAGE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Charles E. Dibble with whom Charles E. Dibble, P.C. was on brief __________________ ________________________ for appellants. Mark H. Gardner with whom Craig F. Evans and Evans & Hermann were _______________ ______________ _______________ on brief for appellees Janet Seymour and Roland Smith. ____________________ February 9, 1993 ____________________ CAMPBELL, Senior Circuit Judge. The mother and _____________________ grandparents of two minor children brought this action in the district court under 42 U.S.C. 1983 and state law against a social worker and two psychologists who were involved in the State of New Hampshire's investigation into reports that the children had been sexually abused. The two psychologists moved to dismiss the complaint against themselves, and the court allowed their motion. It ruled that they had absolute immunity from suit under 42 U.S.C. 1983 and state statutory immunity from the pendent state law claims. We affirm, although on somewhat different grounds as to the 1983 claims. I. I. In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs. Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, _______ _________________________________ 988 (1st Cir. 1992). Here the district court also took into account certain facts set out in public documents plaintiffs attached to an opposition they filed to the motion to dismiss. Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(b)(6). However, courts have made ___ -2- narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. See, e.g., Romani ___ ____ ______ v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. ______________________ 1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud); Fudge v. _____ Penthouse Int'l, Ltd., 840 F.2d 1012, 1014-15 (1st Cir.) ______________________ (considering allegedly libelous article submitted by defendants with motion to dismiss), cert. denied, 488 U.S. ____________ 821 (1988); Mack v. South Bay Beer Distrib., Inc., 798 F.2d ____ _____________________________ 1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."); see also In re Wade, 969 F.2d ________ __________ 241, 249 & n.12 (7th Cir. 1992). Here, all or most of the above-mentioned elements are present. Plaintiffs, moreover, introduced the documents themselves, in order to bolster their argument against defendants' motions to dismiss. See Cortec Indus., Inc. v. ___ ____________________ Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he _________________ problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff . . . . Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint -3- the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."), cert. denied, 112 S. ____________ Ct. 1561 (1992); Berk v. Ascott Inv. Corp., 759 F.Supp. 245, ____ _________________ 249 (E.D. Pa. 1991) ("[W]hen a plaintiff has admitted the authenticity of a document . . ., a court may consider that document in ruling on a motion under Fed. R. Civ. P. 12(b)(6)."). Like the court below, therefore, we treat the documents submitted by plaintiffs the Abuse and Neglect Petitions, the Pittsfield District Court orders, defendant Seymour's written report to defendant Page, and Seymour's affidavit as part of the pleadings. The facts that emerge are as follows: Plaintiff-appellant Valerie Watterson is the natural mother of two minor girls born in 1979 and 1984 respectively ("the older child" and "the young child"; collectively "the children" or "the girls"). Plaintiff- appellant Violet Bruillard is the natural mother of Valerie and grandmother of the children. Plaintiff-appellant Paul Bruillard is Violet's husband, and stepgrandfather to the children. The girls lived with all three appellants in a house belonging to Violet and Paul in New Hampshire. The girls' natural father, who separated from Valerie in 1981, is not a party to this action. Since birth, the older child has had only partial -4- hearing and partial speech abilities. Beginning in 1985, when she was six years old, the child attended the Green Acres School in Manchester, New Hampshire, as part of a program for the hearing impaired. In January 1986, school officials reported unusual behavior by the child to the New Hampshire Division for Children and Youth Services (DCYS), including symptoms of neglect and possible sexual abuse. DCYS officials investigated the case and identified a fourteen-year-old boy who rode to school on the child's school bus as the probable abuser. Steps were taken to remedy the situation and the case was closed. In March 1987, however, school officials again wrote to DCYS to report continuing symptoms of sexual abuse. Defendant Eileen Page (who is not an appellee), a state social worker assigned to the case by DCYS, filed a Petition for Neglect in the Pittsfield District Court, State of New Hampshire, on May 18, 1987. See N.H. Rev. Stat. Ann. 169- ___ C:7. The petition alleged that the older child was subject to neglect by Valerie Watterson, citing the reports of the Green Acres School officials that the child was describing sexual matters in detail to other children and her teacher, fondling herself and other children, and complaining about pains in her stomach and lower abdomen. The petition also alleged that the child wore dirty clothing to school, was unkempt and unwashed, and appeared to be making her own lunch -5- of mayonnaise sandwiches. On May 28, 1987, the Pittsfield District Court conducted a preliminary hearing and ordered that the child, then eight years of age, be referred to Concord Psychological Associates for counseling. See N.H. Rev. Stat. Ann. 169- ___ C:15, 16. The court also granted legal supervision of the child to DCYS, left placement of the child with Valerie Watterson, and ordered DCYS to facilitate the counseling sessions and "to conduct an appropriate investigation, including, but not limited to home environment study." Beginning June 11, 1987, the child attended weekly counseling sessions at Concord Psychological Associates with defendant- appellee Janet Seymour, a psychologist who was not yet certified. Seymour was supervised by defendant-appellee Roland Smith, a board-certified psychologist and director of Concord Psychological Associates. On June 22, in lieu of a scheduled adjudicatory hearing and without a finding of neglect, DCYS and appellant Valerie Watterson entered an agreement for issuance of a consent order. See N.H. Rev. Stat. Ann. 169-C:17. The ___ consent order mandated that, "[The child] shall continue counselling at Concord Psychological Associates, with a report from Concord Psychological Associates filed with this court not later than forty-five days from the date of this agreement." The order also stated that DCYS would assist -6- Valerie in transporting the child to the counseling sessions, that Valerie would submit to psychological evaluation, that DCYS would complete a home study with Valerie's cooperation, and that the court retained jurisdiction over the case. Seymour with the aid of a sign-language interpreter conducted a total of seven psychotherapy sessions with the child from June 11 to July 22, 1987. On Seymour's initiative, the younger child, then three years old, also attended one of the sessions. On July 24, 1987, Seymour reported her findings in writing to social worker Page, stating that the older child revealed during therapy that her grandmother and mother (appellants Violet Bruillard and Valerie Watterson) repeatedly took the girls against their will to a house where the older child was required to sleep in close proximity with boys and a grown man. On one occasion, one male allegedly fondled the older child. The younger child was allegedly threatened with a large knife and subjected to fondling by a young boy while Valerie and the older child watched. The older child also reported being paid for visiting the house, being told not to reveal the visits to anyone, and eventually being informed by her mother in July 1987 (during the period of the counseling sessions) that she would no longer take the girls to the house. On the basis of these findings, Seymour concluded that the girls' grandmother, Violet, may have been -7- "prostituting [the older child] and probably [the young child] to a group of people, likely a sex ring." Seymour stated that Valerie, the mother, was only partially aware of the events at the house but failed to protect the children from the abuse. Seymour concluded her report by recommending that DCYS initially confront Valerie Watterson with the accusations and then, if necessary, remove the girls from appellants' home. The same day Seymour issued her report, Page sought and obtained an ex parte order from the Pittsfield District __ _____ Court for the immediate removal of both children from appellants' home, citing the information gathered by Seymour. See N.H. Rev. Stat. Ann. 169-C:6. That evening law ___ enforcement officials took the two girls from appellants' home and placed them in separate foster homes. On July 27, 1987, Page filed new Abuse and Neglect Petitions with regard to the two children, alleging that they were subject to sexual abuse by Valerie Watterson and Violet Bruillard. See ___ N.H. Rev. Stat. Ann. 169-C:7. On September 24, 1987, in connection with the proceedings, Seymour swore out an affidavit detailing her findings regarding the two children. In her affidavit, Seymour attested that she believed, based on her weekly psychotherapy sessions with the older child and the single session with the young child, that the children were -8- subjected to some sort of child prostitution/satanic worship activity (involving "the killing of animals and children," "ugly hats (perhaps headdresses) with horns," and "men in robes"), at a location identified by the girls as "Mike Chickering's house." Seymour's affidavit was apparently used by the Merrimack County Sheriff's office to obtain a search warrant for the Chickering house, where the only evidence of child prostitution and satanic worship found by police was a catalog for pornographic films and an ordinary letter opener. On May 25, 1988, after eight days of testimony, the Pittsfield District Court ruled that no evidence supported the allegations of ritual sexual abuse occurring at the Chickering residence and so dismissed those particular charges. See N.H. Rev. Stat. Ann. 169-C:18, 19. However, ___ the court stated that it was "obvious" that the older child had been sexually abused and that the young child suffered some traumatic incident that could be classified as abuse. Valerie Watterson and Violet Bruillard appealed the latter findings to the superior court, see N.H. Rev. Stat. Ann. ___ 169-C:28, but DCYS voluntarily withdrew the Abuse and Neglect Petitions before further proceedings were conducted.1 ____________________ 1. The record does not indicate reasons for the withdrawal of the abuse petitions. Nor does any document state whether and when the children were returned to appellants, indicating that there may have been subsequent proceedings regarding the children not at issue here. Appellants' brief states only that the younger child remained in foster homes for a total of two-and-one-half years, and that the older child currently -9- Appellants brought this civil action on July 12, 1990, in the United States District Court for the District of New Hampshire against DCYS social worker Page and appellees Seymour and Smith of Concord Psychological Associates. Appellants alleged in their complaint, as amended, that all three defendants were liable pursuant to 42 U.S.C. 1983 for depriving appellants of their liberty and property without due process of law. The complaint contained pendent state law claims against Seymour and Smith for failing to act with due care with regard to professional standards. The amended complaint also brought state law claims of malicious prosecution and abuse of process against defendant Page, who is not a party to this appeal.2 Seymour and Smith moved to dismiss all claims against them under Fed.R.Civ.P. 12(b)(6) on grounds that they are immune from civil liability. The district court granted these motions on August 12, 1991, holding that the two psychologists had absolute quasi-judicial immunity from the 1983 claims as court-appointed psychologists, and had state statutory immunity from liability under the state law claims ____________________ lives apart from appellants in a residential learning center for deaf children in Massachusetts. 2. The district court assumed that the claims of malicious prosecution and abuse of process also applied to appellees Seymour and Smith and held that they had statutory immunity from those claims. However, appellants clarify on appeal that those two state law claims apply only to defendant Page. -10- pursuant to the New Hampshire Child Protection Act. See N.H. ___ Rev. Stat. Ann. 169-C:31. Appellants appeal from the final judgment dismissing the complaint against Seymour and Smith issued pursuant to Fed. R. Civ. P. 54(b) on February 7, 1992. II. II. A. Section 1983 Claims A. Section 1983 Claims ___________________ We need not decide whether the district court correctly held that a court-appointed psychologist is entitled to absolute immunity from claims in connection with her duties as a quasi-judicial officer. Compare Myers v. _______ _____ Morris, 810 F.2d 1437, 1466-67 (8th Cir.) (holding that ______ court-appointed psychologists have absolute immunity), cert. _____ denied, 484 U.S. 828 (1987) with Hodorowski v. Ray, 844 F.2d ______ ____ __________ ___ 1210, 1215-16 (5th Cir. 1988) (refusing to extend absolute immunity to child protective service workers). This is a difficult and, in this circuit, novel question, on which there is no conclusive authority. See Frazier v. Bailey, 957 ___ _______ ______ F.2d 920, 931 n.12 (1st Cir. 1992); see also Snell v. _________ _____ Tunnell, 920 F.2d 673, 686-89 (10th Cir. 1990) (reviewing _______ various court positions on absolute immunity for child abuse investigation participants), cert. denied, 111 S. Ct. 1622 ____________ (1991). In Burns v. Reed, 111 S. Ct. 1934 (1991), the _____ ____ Supreme Court cautioned that the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their -11- duties." Id. at 1939. The Court went on to say that it had ___ been "'quite sparing' in [its] recognition of absolute immunity, and [had] refused to extend it any 'further than its justification would warrant.'" Id. (citations omitted). ___ We do not suggest that absolute immunity could not exist for these psychologists in the present circumstances. But since for more conventional reasons appellees are clearly entitled to prevail, we rest our decision exclusively on those reasons. Except perhaps for the allegation that Seymour gave false testimony in court, appellants have alluded to no facts that seem even remotely sufficient to show a violation of the federal constitution by the two psychologists. And even assuming Seymour testified falsely, and even assuming her false testimony might otherwise give rise to a claim of constitutional dimensions, she would still be immune from suit under 1983 because of the absolute immunity afforded to witnesses for their testimony in the course of judicial proceedings. Infra. We, therefore, sustain the dismissal of _____ the 1983 claims.3 ____________________ 3. In moving to dismiss, appellees relied exclusively on their argument that the court-appointed psychologists had quasi-judicial immunity for all their challenged activities, although they reserved the right to raise other defenses including the failure to state a claim for relief. While issues not pursued in the district court ordinarily will not be considered on appeal, Brown v. Trustees of Boston Univ., _____ ________________________ 891 F.2d 337, 352 (1st Cir. 1989), cert. denied, 496 U.S. 937 ____________ (1990), we are free to affirm on any independently sufficient -12- To bring an action under 1983, a plaintiff must show both the existence of a federal constitutional or statutory right, and some deprivation of that right as a result of defendants' actions under color of state law. Willhauck v. Halpin, 953 F.2d 689, 703 (1st Cir. 1991). _________ ______ Appellants claim that Seymour and Smith acted under color of state law to deprive them of their right to due process of law in violation of the Fifth and Fourteenth Amendments. We shall assume that the Pittsfield District Court order for counseling and reporting by Concord Psychological Associates provided a sufficient basis for these private defendants to be acting under color of state law. See Frazier, 957 F.2d at ___ _______ 928; Rodriques v. Furtado, 950 F.2d 805, 813-14 (1st Cir. _________ _______ ____________________ ground, Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st ___________ __________________ Cir. 1992). This is especially so where our review is de __ novo. Willhauck v. Halpin, 953 F.2d 689, 704 (1st Cir. ____ _________ ______ 1991). We conclude that in these circumstances it is not improper for us to uphold the dismissal on the ground that appellants failed to make out any claim for the deprivation of a federal constitutional right, even though this particular issue was not explored below. Appellants have explained their theory of the case in the course of arguing against absolute immunity for appellees, and described at oral argument the basis for their federal claims. Furthermore, we take all of appellants' allegations as true and make our determination solely as a matter of law. Cf. ___ Brown v. St. Louis Police Dept., 691 F.2d 393, 396-97 (8th _____ _______________________ Cir. 1982), cert. denied, 461 U.S. 908 (1983) (discussing _____________ "special circumstances" that could make it "fundamentally unfair" to consider alternative grounds on appeal). To send the matter back to the lower court would be an exercise in futility, especially given the additional defense of qualified immunity which, although not discussed here, stands as a further, seemingly insurmountable barrier to recovery. -13- 1991). A likely alternative ground for affirming the district court is qualified immunity. However, before even reaching qualified immunity, a court of appeals must ascertain whether the appellants have asserted a violation of a constitutional right at all. Siegert v. Gilley, 111 S. Ct. _______ ______ 1789, 1793 (1991). Appellants do not allege that the procedures provided under New Hampshire law for child neglect and abuse petitions, concededly followed in this case, are constitutionally inadequate. See N.H. Rev. Stat. Ann. 169- ___ C:1 et seq.. Instead, they make a substantive due process _______ claim, viz., that by means of Seymour's report, appellees deprived them of a constitutionally protected liberty _______ interest in family integrity, including the care, custody and supervision of the children.4 Seymour is said to have ____________________ 4. We see no other constitutionally protected interest or right at stake. Damage to reputation alone does not constitute a violation of a substantive due process right. Paul v. Davis, 424 U.S. 693, 713 (1976). But cf. Petition of ____ _____ _______ ___________ Bagley, 128 N.H. 275, 284-85, 513 A.2d 331 (1986) (holding ______ that officials' determination that child abuse report had foundation in fact and recordation in central registry implicated plaintiffs' due process liberty interest under New Hampshire constitution). In addition, there are no allegations in the amended complaint to support the conclusory claim that appellants were deprived of some constitutionally protected property ________ interest, so we find the complaint fails to state a claim for unconstitutional deprivation of property. See Fed. R. Civ. ___ P. 12(b)(6). The only property interest affected was, we infer from the complaint's allegations, the loss of some money and wages to attend the abuse proceedings and to pay an attorney to represent them, neither of which constitutes, standing alone, an unconstitutional deprivation of property. -14- conspired with Page to conduct an unauthorized investigation of the family's affairs while also counseling the older child. Seymour was allegedly negligent in her counseling, and this negligent counseling and investigating supposedly led to incorrect conclusions about the involvement of Valerie and Violet in the sexual abuse of the girls.5 These incorrect conclusions, contained in Seymour's report, enabled DCYS to obtain court approval for the removal of the children from appellants' home, thereby depriving appellants of their constitutionally protected liberty interest in family integrity.6 Appellee Smith's purported liability stems solely from his allegedly inadequate supervision of Seymour at Concord Psychological Associates. Taking all of plaintiffs' allegations as true, we see only three possible bases for the 1983 claim against Seymour: first, she "conspired" with Page to investigate ____________________ 5. Appellants do not allege the absence of grounds for suspecting abuse by someone. They admit that, during visits to her father, the older child witnessed repeated sexual abuse of another child in a manner nearly identical to that described by the older child to Seymour. In addition, appellants admit that the older child was molested at age six by a fellow student during bus rides to school. 6. While the scope and level of constitutional protection for the liberty interests of grandparents probably differs from that for parents' interests, compare Moore v. City of _______ _____ ________ East Cleveland, 431 U.S. 494, 500-06 (1977) with Stanley v. ______________ ____ _______ Illinois, 405 U.S. 645, 651-52 (1972), appellants Violet and ________ Paul Bruillard, as grandparents who resided with the girls, have interests at least sufficient to avoid dismissal of their 1983 claims on grounds they have no constitutionally protected right at stake. -15- appellants' family without express court authority and direction to do so; second, she negligently counseled and interviewed the children; and third, she presented false testimony and withheld information from the court. The first two theories fall short, however, of stating any federal constitutional claim. While the Supreme Court has recognized an abstract fundamental liberty interest in "family integrity," the Court has never found that interest to be absolute or unqualified. Frazier, 957 F.2d at 929-30. The _______ government has a compelling interest in the welfare of children, and the relationship between parent and child may be investigated and terminated by the state provided constitutionally adequate procedures are followed. Santosky ________ v. Kramer, 455 U.S. 745, 766, 769 (1982). The right to ______ family integrity clearly does not include a constitutional right to be free from child abuse investigations. See ___ Stanley v. Illinois, 405 U.S. 645, 649 (1972) (stating that _______ ________ the State has a "right indeed, duty to protect minor children through a judicial determination of their interests in a neglect proceeding"); Weller v. Department of Social ______ _____________________ Servs., 901 F.2d 387, 391 (4th Cir. 1990); Myers, 810 F.2d ______ _____ at 1462. If while engaged in treating the children under court direction, Seymour, in conjunction with Page, looked into whether the children had been abused by appellants, such a joint undertaking would not, without more, violate any -16- constitutional right of appellants.7 The second factual basis, that Seymour performed the therapy sessions and reported her findings with a lack of due care, at most states a claim of negligence, which is insufficient to constitute a deprivation of due process of law.8 Daniels v. Williams, _______ ________ 474 U.S. 327, 332-34 (1986). Appellants' third allegation, that Seymour conspired with Page to present false testimony to and withhold material evidence from the court hearing the abuse charges, fails for a different reason: all witnesses at judicial proceedings have an absolute immunity from damages liability based on their testimony. Briscoe v. LaHue, 460 _______ _____ ____________________ 7. Describing the investigation by Seymour and Page as a "conspiracy" adds nothing to the charge; mere conclusory allegations that defendants "conspired" are not enough in a civil rights complaint to turn otherwise lawful actions into a valid claim of unlawful conspiracy. See Glaros v. Perse, ___ ______ _____ 628 F.2d 679, 685 (1st Cir. 1980). 8. Appellants allege without further explanation or factual support in their complaint that Seymour conducted the counseling sessions with reckless and callous indifference to their constitutional rights. While reckless indifference, as opposed to mere negligence, may be actionable under 1983, see Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st ___ ______________ _______________ Cir. 1990), no set of facts alleged in this complaint, or reasonable inferences therefrom, could support a finding of more than simple lack of due care. It was not Seymour's counseling activities, as such, moreover, that injured appellants. It was Seymour's report to Page, conveying the story of possible abuse by appellants. Yet appellants admit that the older child had been sexually abused by other unidentified persons, see supra note 5, and the only alleged ___ _____ problems with Seymour's report were purported omissions and misinterpretations of certain facts. Seymour herself, moreover, recommended that DCYS seek the cooperation of Valerie Watterson before considering removal of the children. -17- U.S. 325, 326 (1983). This immunity applies even to public officials who knowingly give false testimony. Id. at 345. ___ Seymour thus had absolute immunity for her testimony, even assuming it was either false or incomplete. The 1983 claim against Smith is based solely on his actions as the supervisor of Seymour's counseling and investigation. Because Seymour violated no constitutional rights of appellants in her counseling and investigation, we find even less basis for recovery against Smith for supervising her. See Frazier, 957 F.2d at 931-32. ___ _______ For these reasons, the 1983 claims against Seymour and Smith were properly dismissed. B. State Law Claims B. State Law Claims ________________ The district court held that the two psychologists, Seymour and Smith, had immunity from the state law claims pursuant to a state statute, N.H. Rev. Stat. Ann. 169-C:31, which immunizes persons who report suspicions of child abuse to the proper state authorities in good faith.9 Appellants ____________________ 9. N.H. Rev. Stat. Ann. 169-C:31 provides: Anyone participating in good faith in the making of a report pursuant to this chapter is immune from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant has the same immunity with respect to participation in any investigation by the bureau or judicial proceeding resulting from such report. N.H. Rev. Stat. Ann. 169-C:29 requires that certain persons -18- argue that the district court misapplied the immunity statute because their state law claims against appellees stem from ____________________ report suspected child abuse. Any physician, surgeon, county medical examiner, psychiatrist, resident, intern, dentist, osteopath, optometrist, chiropractor, psychologist, therapist, registered nurse, hospital personnel (engaged in administration, examination, care and treatment of persons), Christian Science practitioner, teacher, school official, school nurse, school counselor, social worker, day care worker, any other child or foster care worker, law enforcement official, priest, minister, or rabbi or any other person having reason to suspect that a child has been abused or neglected shall report the same in accordance with this chapter. N.H. Rev. Stat. Ann. 169-C:30 describes how such reports are to be made. An oral report shall be made immediately by telephone or otherwise, and followed within 48 hours by a report in writing, if so requested, to the bureau. Such report shall, if known, contain the name and address of the child suspected of being neglected or abused and the person responsible for the child's welfare, the specific information indicating neglect or the nature and extent of the child's injuries (including any evidence of previous injuries), the identity of the person or persons suspected of being responsible for such neglect or abuse, and any other information that might be helpful in establishing neglect or abuse or that may be required by the bureau. "Bureau" is defined as "the bureau of children, division for children and youth services, department of health and human services." N.H. Rev. Stat. Ann. 169-C:3 IV. This agency is referred to herein as DCYS. -19- the lack of due care in performance of the counseling services, not from Seymour's subsequent report of suspected child abuse (which, appellants concede, is protected by the immunity statute). We reject appellants' argument. The injuries alleged in their complaint are separation from the children, damage to their reputations, and various forms of emotional distress. No harm to the children as the result of their being negligently counseled is alleged, nor was suit brought on the children's behalf to complain of the alleged malpractice. All the asserted harms resulted from the state's removal of the children. Seymour's and Smith's sole connection to that separation was Seymour's report to DCYS of her suspicions that the girls were being sexually abused. Clearly, Seymour's report of suspected abuse falls squarely within the meaning of "a report pursuant to this chapter" as defined by N.H. Rev. Stat. Ann. 169-C:31. See Petition of ___ ___________ Bagley, 128 N.H. 275, 280, 513 A.2d 331 (1986) (interpreting ______ provisions of the N.H. Child Protection Act). While appellants contend that the Abuse and Neglect Petition would not have been filed but for the allegedly negligent manner in which Seymour conducted the counseling sessions, we find no support in New Hampshire law, nor was any cited, for removing the immunity protection of N.H. Rev. Stat. Ann. 169-C:31 if the report is the product of negligently administered -20- psychotherapy. See State v. Howland, 125 N.H. 497, 500-02, ___ _____ _______ 484 A.2d 1076, 1077-78 (1984) (discussing the scope of statutory immunity under N.H. Rev. Stat. Ann. 169-C:31). III. III. For the reasons stated above, we affirm the district court's dismissal of appellants' complaint against appellees Seymour and Smith. Affirmed. Costs to appellees. _________ __________________ -21-