**AIRFRAME SYSTEMS, INC., Airline Software, Inc., Plaintiff**

v.

**RAYTHEON COMPANY, John Stolarz, L–3 Communications Holdings, Inc., & L–3 Communications Corp., Defendants.**

**Civil Action No. 07–10142–WGY.**

United States District Court, D. Massachusetts.

Oct. 31, 2007.

---

Bruce I. Afran, Attorney–At–Law, Princeton, NJ, Peter B. Krupp, Sara A. Laroche, Lurie and Krupp, LLP, Boston, MA, for Plaintiff.

Alan M. Gelb, Rita W. Gordon, Alan M. Gelb, Jones Hirsch Connors & Bull PC, New York, NY, David J. Fine, Law Offices of David J. Fine, Kurt L. Glitzenstein, Adam J. Kessel, Fish & Richardson, PC, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WILLIAM G. YOUNG, District Judge.

## I. INTRODUCTION

The plaintiff, Airframe Systems, Inc. ("Airframe"), formerly known as Airline Software, Inc., alleges its proprietary source code was stolen and illegally used by its employee, John Stolarz ("Stolarz"), to provide a free software upgrade to Raytheon Company ("Raytheon"), L–3 Communications Holdings, Inc. ("L–3 Holdings"), and L–3 Communications Corporation ("L–3 Communications") (collectively, "Raytheon/L–3"). Airframe ad-

vances claims of copyright infringement, violations of the Computer Fraud and Abuse Act, and several related state-law causes of action. Raytheon/L–3 brings a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), invoking the doctrine of claim preclusion. Stolarz brought a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

### A. Federal Jurisdiction

This Court has subject matter jurisdiction over Airframe's claims by virtue of a federal question arising under the Copyright Act, 17 U.S.C. § 504, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. See 28 U.S.C. § 1331. Jurisdiction is proper over the additional state-law claims under 28 U.S.C. § 1367.

### B. Procedural Posture

Airframe previously sued L–3 Communications over the possession of its source code in the Southern District of New York. *See Airframe Sys., Inc. v. L–3 Commun'c Corp.,* No. 05 CV 7638(GBD), 2006 WL 2588016 (S.D.N.Y. Sept.6, 2006). The court dismissed that action for failure to state a claim. *Id.* at *4.

Airframe brought the current action in the District of Massachusetts four months later on January 26, 2007. Raytheon/L3 and Stolarz each filed motions to dismiss on May 9. At a hearing on July 18, this Court granted Stolarz's motion to dismiss the claims against him for lack of personal jurisdiction. This Court took Raytheon/L–3's motion under advisement, however, to consider the scope of the record that properly could be used in evaluating the motion to dismiss based on claim preclusion.

## II. DETERMINING THE PROPER RECORD

■ Documents filed by both parties refer to materials from *Airframe.* These include the original complaint, the transcript of the oral argument upon the motion to dismiss filed therein, the resulting order, and several letters sent by the parties in the original suit and made part of the record therein.

■ As an initial matter, this Court takes judicial notice of the contents of court documents from the previous case, as they are readily ascertainable from a reliable source. See Fed.R.Evid. 201(a). It should be kept in mind, however, that "[a]lthough in certain circumstances a court's records are susceptible of judicial notice, that a fact sought to be noticed is found in a court's record is not talismanic." *In re Armorflite Precision, Inc.,* 48 B.R. 994, 996 (D.Me.1985). While the Court may take notice of these documents, the propriety of considering them in connection with a Rule 12(b)(6) motion is still an issue.

■ Ordinarily, a court will not view documents that are not a part of the complaint on a motion to dismiss, lest doing so convert it into a motion for summary judgment. See Advisory Committee Notes to Fed.R.Civ.P. 12(b)(6); *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). This practice protects a plaintiff from being unfairly surprised. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991). At the same time, however, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson,* 987 F.2d at 3 (collecting cases). Given the rationale behind the default rule, courts are particularly agreeable to viewing documents offered by the plaintiff in his effort to defeat the motion or those

that are referred to in the complaint. *See id.* at 4. In addition, where the plaintiff has referenced part of a document in the complaint, it is proper for the court to view the rest of that document so as to be able to understand it in context. *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996).

In the present action, Airframe bases its claims on an admission made by L–3 Communications counsel Alan Gelb ("Gelb"), which is found in the transcript of *Airframe's* oral argument. Compl. ¶¶ 49–67. As a public record upon which Airframe's entire action relies, this document fits neatly within several of the enumerated exceptions to the general proscription against considering materials outside the complaint. *See Watterson,* 987 F.2d at 3; *Shaw,* 82 F.3d at 1220. Thus, the Court has reviewed it in its entirety in ruling on this motion. The Court may also view the complaint and order from *Airframe,* as these are public documents whose authenticity is not disputed by the parties. *See Watterson,* 987 F.2d at 3. The various letters are properly before the Court as well because the parties do not dispute their authenticity. *See id.* The Court is reassured that its decision with regard to the scope of the record is proper due to the fact that Airframe became aware of the contents of these documents during the previous suit. Thus, there is no concern that their use at this time will result in unfair surprise. *See Cortec Indus.,* 949 F.2d at 48. Accordingly, the Court properly may review each of those documents without being required to render summary judgment in this action. *See Watterson,* 987 F.2d at 3–4.

## III. RAYTHEON'S/L–3's MOTION TO DISMISS

### A. Factual Background

The following facts are drawn from the complaint and the record established above, drawing all inferences in Airframe's favor.

Airframe develops software used in connection with the maintenance and upkeep of aircraft. Compl. [Doc. No. 1] ¶ 11. It then licenses the software for use to third parties. Compl. ¶ 14. This license can cost hundreds of thousands of dollars. *See id.* ¶¶ 37, 54. All of Airframe's software is proprietary and registered under the Copyright Act. *Id.* ¶ 74–75.

Airframe's software is distributed to customers in machine readable form. *Id.* ¶ 22. The source code, however, is required to make any upgrade or modification to the software. *Id.* ¶ 23. Airframe generally keeps the source code secret in order to maintain its exclusivity in the lucrative field of upgrading and modifying its own software. Airframe gives the code to customers only rarely and only in exchange for "extraordinary" consideration. *Id.* ¶¶ 23–27.

Airframe began licensing its software suite to Raytheon in 1986. *Id.* at 33. At some time during Raytheon's licensing of the software, Airframe sent Stolarz to deal with a technical issue. *See id.* ¶ 52. Stolarz installed Airframe's source code onto Raytheon's computer system and used it to upgrade Raytheon's software to be compatible with a new computer. *Id.* Airframe did not know that Stolarz had taken these actions, *see id.* ¶¶ 44, 50, nor did it ever authorize him to perform them. *Id.* ¶ 56. In fact, Airframe had previously offered the upgrade effectuated by Stolarz to Raytheon at a cost of $150,000; Raytheon rejected the offer. *Id.* ¶ 54. Instead, Raytheon utilized Stolarz to obtain the upgrade for free. *See id.* ¶¶ 72, 96–99.

Airframe continued to license software to Raytheon until March of 2002. At that

time, Raytheon sold the assets of its Aircraft Integration Systems division, including the license to the Airframe software, to L–3 Communications.[1] *See id.* ¶ 90. In 2003, Airframe discovered that L–3 Communications possessed the source code. *Id.* ¶ 44. At that point, however, Airframe did not know whether L–3 Communications actually had used the source code. *Id.* ¶ 50.

Airframe filed suit in the Southern District of New York alleging that L–3 Communications had violated the Copyright Act and made several related state-law claims. *Airframe,* 2006 WL 2588016, at *1. But while Airframe speculated that L–3 *could* have made use of the source code, *id.* at *4, it was unable ethically and properly to claim that use had actually occurred. *See id.;* Compl. ¶ 50. As a result, the court dismissed the claim because Airframe failed to plead a required element of infringement: improper use. *Airframe,* 2006 WL 2588016, at *3–4. The state law claims were also dismissed. *Id.*

During oral argument regarding the motion to dismiss, which occurred on March 2, 2006, Gelb admitted that L–3 Communications and its predecessor-in-interest, Raytheon, had made some use of the source code. Compl. ¶ 52. Specifically, Gelb stated Stolarz used the source code to upgrade the software while Raytheon still ran the business. *Id.* L–3 Communications continued to use this upgraded software once it purchased the license from Raytheon. *Id.* ¶ 60. Gelb's admission of use provided Airframe with the element it was missing when it filed suit in New York, and it forms the basis of the current action.

### B. Discussion

■ Claim preclusion is designed to preserve judicial resources; it therefore bars litigation of claims that were or should have been brought in an earlier suit. *Andrews–Clarke v. Lucent Techs., Inc.,* 157 F.Supp.2d 93, 99 (D.Mass.2001). The doctrine applies when three conditions exist: (1) final judgment on the merits in a prior suit, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity of parties in the two suits. *Id.*

### 1. Final Judgment on the Merits

■ A dismissal for failing to state a claim is treated for claim preclusion purposes as a judgment on the merits unless the order of dismissal explicitly states otherwise. *Id.* 99–100. The order of dismissal in *Airframe* did not explicitly state that it was without prejudice or that Airframe had a right to maintain a second action. *See Airframe,* 2006 WL 2588016 at *1–4. As a result, the order of dismissal for failure to state a claim must be considered a judgment on the merits. The first condition precedent to the application of claim preclusion therefore exists.

### 2. Identity Between Causes of Action

■ Two claims are identical when they both arise from "a common nucleus of operative facts." *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir.1994). Federal courts determine the bounds of the nucleus by means of a "transactional approach." *See id.* This involves identifying whether the facts necessary to sustain both cases arise from the same transaction or series of transactions. *Id.*

■ Here, there is sufficient identity between the cause of action in the first case and that advanced in the present. The facts essential to sustain both cases arise from the installation and use of Air-

---

**1.** L–3 Communications is a wholly-owned subsidiary of L–3 Holdings. Compl. ¶ 8.

frame's source code on Raytheon's computer. *Compare Airframe,* 2006 WL 2588016, at *1–4, *with* Compl. ¶ 73–153. In the previous case, Airframe claimed that L–3 (Raytheon's successor) violated its rights by virtue of its possession and installation of Airframe's source code. *See Airframe,* 2006 WL 2588016, at *1–2. Airframe there speculated, but did not allege, that this source code could have been used in some fashion. *Id.* at *2 n. 5. Airframe makes essentially the same factual allegations here, based on the same events, except this time it knows rather than guesses that the source code was used by Raytheon/L–3. *See* Compl. ¶ 50, 53.

Although Airframe opines that the inclusion in its complaint of an allegation of improper use, absent in the original suit, bars a finding of factual identity, Mem. in Opp. [Doc. 31] at 3–6, this argument is without merit. Factual identity is based on whether both cases arise from a "common nucleus of operative facts," not whether all the facts involved in that nucleus were pled in the original case. *See Gonzalez,* 27 F.3d at 756 (stating that "the omission of a particular statement of claim from the original suit is of no great consequence"). Moreover, the body of law that Airframe cites to support its understanding of factual identity, *see* Mem. in Opp. at 3–6, does not aid its cause. Those cases, for instance, deal with situations in which the original suit was brought in state court, such that the plaintiff was unable to bring its copyright claims at all in the earlier action, *see RX Data Corp. v. Department of Soc. Servs.,* 684 F.2d 192 (2nd Cir.1982), or those in which independently actionable conduct arose from a new, separate incident after the complaint was filed, *see, e.g., Sec. and Exch. Comm'n v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1464–65 (2d Cir.1996). In contrast, Airframe does not contend that the instant complaint arises out of a separate incident than that

leading to the New York suit; it merely has more evidence to support its previous claim. *See* Compl. ¶¶ 49–56. That this evidence was not available to Airframe when it originally brought suit does not affect the fact that it arose from the same transaction that formed the basis of the original claim.

■ Similarly, Airframe's assertion that it was not obligated to amend its complaint to reflect the admission of use, Mem. in Opp. at 3 n. 2, does not hold water. Although, as Airframe points out, "[t]he *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated," *Computer Assocs. International, Inc. v. Altai, Inc.,* 126 F.3d 365, 370 (2d Cir.1997), that principle is inapplicable here. The admission by Gelb did not create a new right; it simply revealed evidence germane to the right that Airframe originally sued to enforce.

Airframe's current complaint arises out of the same events and alleges substantially the same facts as those claimed in the prior suit. Because doing otherwise would give Airframe a second bite of the apple, this Court rules that there is sufficient identicality of claims to support the application of claim preclusion.

### 3. Identity of Parties

■ The final barrier to the application of claim preclusion in this case is its requirement of party identity. The easiest way to fulfill this condition is to show that the parties in the present suit were parties to the original suit. *See Andrews–Clarke,* 157 F.Supp.2d at 100 ("There is no dispute that Travelers and TAO were parties in the earlier action and meet the identity of parties criteria."). This is the case with respect to L–3 Communications, which was the defendant in the original suit. *See*

*Airframe,* 2006 WL 2588016, at *1. Accordingly, all of the original claims against L–3 Communications are extinguished by the doctrine of claim preclusion. Whether this prong is satisfied as to Raytheon and L–3 Holdings, which were not named in the original suit, is a more difficult question.

■■■■ Although claim preclusion generally applies only where the parties in the two suits are the same, defensive non-mutual claim preclusion may yet be applicable in cases where the new defendant shares a "significant relationship" with the old. *See Andrews–Clarke* at 100–01. In *Andrews–Clarke,* the court permitted the use of claim preclusion where the liability of the defendant in the later action was dependent upon the actions of the defendants in the prior actions. *See id.* at 101. Moreover, a successor-in-interest has often been found to have a sufficiently significant relationship to the original defendant to permit it to invoke claim preclusion as a defense. *See Pall Corp. v. Fisher Scientific Co.,* 962 F.Supp. 210, 211–13 (D.Mass.1997)(applying claim preclusion to new defendant who was successor-in-interest to infringing products). Essentially, defensive non-mutual claim preclusion is proper where the defendant shows good cause why it should have been joined in the original action and the plaintiff can provide no reason why it should be given a second chance. *Andrews–Clarke,* 157 F.Supp.2d at 101–02.

Here, Raytheon has a significant relationship with L–3 Communications. Airframe alleges liability on the part of L–3 Communications here as a successor-in-interest to the license which was originally violated by Raytheon. See Compl. ¶¶ 90–94. The allegations of involvement in the installation of the source code now lodged against Raytheon were attributed to L–3 Communications in the original suit.

*Compare Airframe,* 2006 WL 2588016, at *2, *with* Complaint at ¶¶ 49, 52–59, 96–99. Most tellingly, after the Gelb admission and while the motion to dismiss was under advisement, Airframe recognized the possibility of amending its complaint to include Raytheon, although it ultimately chose not to do so. Mem. in. Opp. at 3. Airframe has not provided a good reason why it could not or would not join Raytheon in the prior action and thus take advantage of its opportunity there to seek redress for Raytheon's alleged violations of Airframe's rights. *See Andrews–Clarke,* 157 F.Supp.2d at 101. It is therefore proper for this Court to treat Raytheon as being in privity with L–3 Communications and accordingly to extinguish the claims against it.

Similarly, liability against L–3 Holdings is entirely predicated upon ownership of L–3 Communications, giving rise to exactly the type of significant relationship necessary for an application of defensive non-mutual claim preclusion. *See Andrews–Clarke,* 157 F.Supp.2d at 101. As a result, this Court rules that all three prerequisites for the application of claim preclusion are present in this case.

### C. Scope of the Claim Preclusion

■■■■ This Court, however, rejects the notion that Airframe's tactical error in filing its complaint in the Southern District of New York before it had all the facts (and its subsequent failure to amend its complaint to include Gelb's admission) compels the grant of what would amount to a forced perpetual license with regard to the use of the illegally upgraded software. Claim preclusion bars separate suits on the same wrong but not for two or more *distinct* wrongs, even if those distinct wrongs are similar in nature. *Rohauer v. Killiam Shows, Inc.,* 379 F.Supp. 723, 736 (S.D.N.Y.1974)(citing *Lawlor v.*

*National Screen Serv. Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)), *rev'd on other grounds* 551 F.2d 484 (1st Cir. 1977); *see also Charter Commc'n Entm't I, DST v. Burdulis,* 460 F.3d 168, 180 n. 12 (1st Cir.2006). Furthermore, claim preclusion bars litigation only where the claims "were or could have been raised" in the prior action. *Andrews–Clarke,* 157 F.Supp.2d at 99. This is relevant here insofar as "[e]ach act of [copyright] infringement is a distinct harm giving rise to an independent claim for relief." *Stone v. Williams,* 970 F.2d 1043, 1049 (2nd Cir. 1992). With regard to software, an act of copying sufficient to violate the Copyright Act occurs each time the software is run. *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 518 (9th Cir.1993) (explaining copy is created when software is transferred from a permanent storage device, including hard drive, to read-only memory).

Thus, L–3 Communications violates the Copyright Act *each time* it runs the illegally upgraded software on its computers, and each violation presents a separate cause of action. Obviously, Airframe could only bring suit in the prior action for those copyright violations that had actually occurred. Therefore, while the doctrine of claim preclusion wipes out liability based on any actions or conduct preceding the September 6, 2006 decision in *Airframe,* neither the dismissal of that action nor the doctrine of claim preclusion affects Airframe's ability to sue L–3 Communications based on separate causes of action arising from its use of the software after that date. Drawing all reasonable inferences in Airframe's favor, as the Court must, the present complaint adequately alleges sufficient facts to make it plausible that L–3 Communications continues to violate Airframe's copyright. *See Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## II. CONCLUSION

For the reasons set forth above, the motion to dismiss [Doc. 23] is DENIED insofar as it alleges L–3 Communications engaged in copyright infringement after September 6, 2006. The motion is otherwise ALLOWED.

SO ORDERED.