UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephen Harriman,
    Plaintiff

    v.                                    Case No. 14-cv-237-SM
                                          Opinion No. 2015 DNH 028
Patti Kemen, Individually and
on behalf of REMAX Legacy;
Patti Kemen Enterprises, LLC;
Vendor Resource Management, Inc.;
and Federal Home Loan Mortgage
Corp. (a/k/a Freddie Mac),
    Defendants


**O R D E R**


    Plaintiff, Stephen Harriman, was severely injured while attempting to remove an above-ground swimming pool for one or more of the named defendants.  In the wake of that accident, he filed this action seeking damages for his injuries.  In his complaint, Harriman advances the following state common law claims: negligence (count one); negligent training and supervision (count two); premises liability (count three); intentional infliction of emotional distress (count four); and negligent infliction of emotional distress (count five).


    Pending before the court is defendant Vendor Resource Management, Inc.'s motion to dismiss all claims asserted against it.  For the reasons discussed, that motion is granted.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove

the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.[1]

## Background

Accepting the factual allegations in Harriman's complaint as true, the relevant background is as follows. In September of 2010, Freddie Mac conducted a foreclosure sale of property located in Windham, New Hampshire, and took title to that property. Subsequently, it contracted with Patricia Kemen, owner of the Remax Legacy real estate agency in Dover, New Hampshire, to market and sell the property. Lisa Corbin Walker, a real estate agent in that office, was assigned to oversee clean-up at the property and its eventual sale.

Separately, Freddie Mac had previously contracted with Vendor Resource Management, Inc. ("VRM") to oversee the maintenance, marketing, and sale of many of the properties to which Freddie Mac had taken title by way of foreclosure deed. VRM is a Texas corporation, with an office in Pomona, California.

---

[1] Parenthetically, the court notes that VRM has attached several documents to its motion to dismiss that are, at least arguably, not properly before the court on such a motion. See generally Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). While Harriman has not objected, the court has not considered those materials in resolving VRM's motion.

3

Among other things, VRM was charged with reviewing and approving any expenses related to preservation, maintenance, and disposition of the numerous properties owned by Freddie Mac - including the property in Windham.

In early 2011, Walker asked Harriman if he was interested in doing the "trash out" for the Windham property. Harriman had been performing such work for Walker as an independent contractor since the end of 2010. "Trash out" apparently involves removing debris from the property and, in general, preparing it for sale. According to Harriman, in an e-mail dated February 16, 2011, he provided Walker with an estimate for his "trash out" services at the Windham property so she might submit it to VRM for approval. That estimate did not, however, include a proposed price for removing an above-ground pool on the property. So, Walker asked Harriman to revise his estimate to include the pool removal, which he did. But, according to Harriman, he cautioned Walker that:

> The estimate contains the removal of the above ground pool. I just want to be clear that this cannot be removed until all the snow and ice is melted. The pool liner, if it has one, is going to be filled with up to 4 feet of ice on it. I will not be able to get it out right now.

Complaint at para. 26. In response, Harriman says Walker admitted that she had "dropped the ball" on this property, should

4

have obtained approval from VRM for Harriman's services long ago, and clean-up at the property was now "a rush." Id. at para. 27. Harriman responded, telling Walker that:

> The pool could not be removed until the ice and snow were gone because even if the pool were removed, there would be a three to four thousand pound chunk of ice on top of the liner, which he would not be able to move and that it would need to melt.

Id. at para. 28. Nevertheless, says Harriman, Walker pressured him to remove the pool within ten days. Id.

But, a few days later (before Harriman began any work on the pool), Walker informed him that she had heard from representatives of VRM, who told her that Harriman could leave the pool for "a couple weeks" - presumably to allow the ice to melt - if he was able to secure it in such a way as to prevent anyone from falling into it or otherwise being injured by its presence on the property. Although he was afforded the option of "securing" the pool and dismantling it in a couple weeks, Harriman elected to dismantle it immediately - in part, it seems, because he says he was unsure how to properly secure it and because he was told the job would not be considered "complete" until the pool was removed. Complaint at para. 30.

5

According to the complaint, the subsequent events unfolded as follows:

> Plaintiff could not secure the pool as required because of the ice, so his only alternative was to remove the pool.
>
> Plaintiff was not certain on how to proceed with dismantling the pool because of the ice that was in the pool. He had never taken a pool down with ice in it.
>
> On March 31, 2011, the date of the incident, Plaintiff attempted to dismantle the pool.
>
> Plaintiff did not drain the pool because he thought it was solid ice, and could not locate any drain spout on the outside of the pool.
>
> After removing the rails and supports from the opposite side of the pool, Plaintiff stood on the side of the pool that was closest to the house. In an instant, the thick sheet of ice that had covered the top of the pool slid towards Plaintiff, struck him in his leg, and amputated his leg.

Complaint at paras. 34-39. According to Harriman, defendants' negligent and intentional conduct caused his severe physical, and resulting emotional, injuries.

## Discussion

Harriman's complaint advances four claims against VRM: negligence, negligent training and supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress.

6

I.   Negligence.

As to Harriman's first two claims, VRM asserts that, as the complaint makes plain, it had no relationship with Harriman beyond having approved his bid to perform the trash out services; each was an independent contractor, with VRM being retained by Freddie Mac, and Harriman being retained by Walker/Remax. Accordingly, VRM claims it owed Harriman no legal duties that might give rise to his negligence or negligent training and supervision claims.

Harriman's theory of liability is less clear, so it is, perhaps, best to simply quote from his complaint and legal memorandum.  He claims that VRM owed him a duty "to use reasonable care as to instructing [him] as to the performance of tasks associated with completing a trash out."  Complaint at para. 41.  He says VRM breached that duty by "requiring [him] to complete a task for which he was not qualified, requiring him to undertake a dangerous activity for which he was not trained, and requiring him to complete the task at an inappropriate time of the year."  Id. at para. 42.  In other words, Harriman asserts that VRM owed him a duty to make certain that he was capable of safely performing the pool-removal service he proposed to provide.  Additionally, Harriman says VRM owed him a duty to insure that safeguards were put in place to prevent him from

7

being injured during the course of that work and/or see to it that he received proper instruction on how to disassemble the pool.  Specifically, he says:

> VRM was negligent in hiring Plaintiff to complete the trash out because it failed to evaluate Plaintiff's qualifications.  VRM was negligent in instructing Plaintiff because it failed to provide Remax's agent [Walker] with the guidelines that Plaintiff needed to follow [to safely disassemble the pool].  VRM failed to undertake any inquiry into the feasibility of removing/securing a frozen pool and thus failed to properly instruct Remax's agent who in turn could not properly instruct Plaintiff.

Plaintiff's memorandum (document no. 22) at 6.

In support of that argument, he relies upon exceptions to the general rule that an "employer" (here, VRM) is not liable for the negligence of its independent contractor (Harriman).[2]

> The [New Hampshire Supreme] Court stated that there are three exceptions to this general rule: (1) negligence of the employer in selecting, instructing or supervising the contractor; (2) employment for work that is inherently dangerous; and (3) instances in which the employer is under a nondelegable duty.

---

[2]     VRM denies the assertion advanced in Harriman's legal memorandum that VRM was his "employer," and it points out that Harriman's complaint does not allege that VRM employed or contracted with him.  To the contrary, in fact, the complaint alleges that Harriman was retained by Walker/Remax to perform the trash out services.  See Complaint at paras. 23-24.  See also Defendant's Reply Memorandum (document no. 25) at 1-2.

8

Plaintiff's Memorandum (document no. 22) at 4.  See also Lawyers

Title Ins. Corp. v. Groff, 148 N.H. 333, 336 (2002).  Harriman

goes on to argue that:

> One who employs an independent contractor to do work
> which the employer should recognize as necessarily
> creating, during its progress, conditions containing an
> unreasonable risk of bodily harm to others unless
> special precautions are taken, is subject to liability
> for bodily harm caused by them by the absence of such
> precautions, if the employer (a) fails to provide in
> the contract that the contractor should take such
> precautions; or (b) fails to exercise reasonable care
> to provide in some other manner for the taking of such
> precautions.  [The] employer of [an] independent
> contractor may be liable for physical harm caused by
> the contractor carrying out orders or directions
> negligently given by the employer.

Plaintiff's memorandum at 6 (emphasis supplied, citations

omitted).

While Harriman may accurately describe New Hampshire's

common law concerning an employer's liability for the negligence

of its independent contractor, it is unclear how that particular

aspect of New Hampshire law applies in this case.  The principle

upon which Harriman relies (and the various cases and treatises

he cites in support of that principle) stand for the following

proposition: under some circumstances, if an employer fails to

take certain remedial measures, that employer may be liable to

third parties for the negligence of its independent contractor.

Here, however, even assuming VRM may properly be viewed as

9

Harriman's employer, no third parties were injured in Mr. Harriman's tragic accident. Only he, the independent contractor, sustained injuries as a result of his arguable negligence and he has failed to point to any law that might impose liability on VRM for those injuries.

The examples given in Harriman's memorandum underscore this very point. In one example, he points out that the "making of excavation immediately adjoining a public highway involves a risk of bodily harm <u>to persons traveling the highway</u> unless a fence or other guard is put up to prevent their falling into the excavation. The digging of a trench on a public highway or any other place <u>where others</u> are entitled to come, by the consent of the employer or otherwise, involves a <u>risk to them</u> if the ditch remains open." <u>Id</u>. at 7 (emphasis supplied). <u>See also Id</u>. ("One who entrusts [hazardous] work to an independent contractor [must] provide for the taking of the necessary precautions <u>to protect others</u> from the danger which in the absence the work necessarily involves.") (emphasis supplied). Each of those examples speaks to potential liability on the part of the employer for the negligence of its independent contractor that caused injury to a third party; none addresses any potential liability for injuries sustained by the independent contractor himself.

10

There appears to be a dearth of law on this particular issue in New Hampshire.[3]  But, as VRM points out, at least one court, the Missouri Court of Appeals, has addressed the question in some detail.  See Lawrence v. Bainbridge Apartments, 957 S.W.2d 400 (Mo.Ct.App. 1997).  In Lawrence, a window washer who had contracted to provide cleaning services as an independent contractor was injured in a fall while providing those services. Like Harriman, the plaintiff invoked an exception to the general rule that employers are not liable for the negligence of their independent contractors.  Specifically, the plaintiff asserted that because he was performing an inherently dangerous activity, he could recover in negligence against his employer, whom he

---

[3]     In a somewhat related context (i.e., negligent hiring of an independent contractor), the New Hampshire Supreme Court has observed that:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done.  We first note the prevailing view that the doctrine of negligent hiring does not apply to cases such as this, where the injured plaintiff was an employee of the contractor hired by the defendant.

Richmond v. White Mountain Rec. Ass'n, 140 N.H. 755, 758 (1996) (citations and internal punctuation omitted).  Presumably, then, under the "prevailing view" of the law, the independent contractor himself could not recover from the employer for injuries that he sustained as a result of having failed to "skillfully and carefully" perform the work at issue, nor could he recover on a theory that the employer negligently hired him.

11

alleged had failed to take reasonable and necessary precautions to insure against his injury.

The Missouri Court of Appeals disagreed, noting that there are public policy reasons supporting the rule of law allowing, under certain circumstances, innocent third parties to recover from an employer for injuries sustained as a result of its independent contractor's negligence.  But, as for the independent contractor himself, he could not recover on a negligence theory under the "inherently dangerous activity" exception to the general rule insulating employers from liability for the negligence of their independent contractors.

> An independent contractor holds himself out as an expert who is uniquely qualified and skilled to bid for and perform the acts in question.  As an expert, he is in a better position to understand the risks and costs involved in a particular job and he may demand sufficient remuneration and safety measures to cover what he believes the attendant risks to be.  In return for his bargained-for price, he accepts the allocation of the risk.
>
> To allow the independent contractor to recover compensation for his injuries from the landowner in addition to his negotiated price allows for double recovery, if he negotiated a fair price, and allows the independent contractor to be rescued from a bad bargain in the event he failed to negotiate an adequate price. In either case, a rule of liability allowing the independent contractor, who performs the work himself to recover for his own injuries, offends the objectives of tort law because it fails to place the cost on the

12

> party in the best position to avoid the risk and absorb
> the loss.

Lawrence, 957 S.W.2d at 405.


Little more need be said.  Harriman has failed to point to any precedent (whether binding or merely persuasive) or any learned treatises supporting his negligence claims against VRM. First, and perhaps most fundamentally, his complaint does not allege that VRM retained him as an independent contractor. Instead, Harriman's complaint makes plain that Remax/Walker retained his services.  Moreover, even if he had credibly alleged that VRM had contracted with him to perform the trash out services, he has failed to identify the source or nature of any duties VRM might have owed to protect him from injury while he was removing the pool, or to train him to perform that task, or to supervise his performance of that task.  He has, then, failed to state the essential elements of a viable negligence claim against VRM.  Counts one and two of Harriman's complaint must, therefore, be dismissed.


II.  Negligent and Intentional Infliction.

Harriman's complaint also fails to set forth the essential elements of viable claims for either negligent or intentional infliction of emotional distress.  See generally O'Donnell v. HCA

13

Health Services of N.H., 152 N.H. 608 (2005) (discussing elements of a viable claim for negligent infliction of emotional distress); Tessier v. Rockefeller, 162 N.H. 324 (2011) (discussing elements of a viable claim for intentional infliction of emotional distress). See also Corso v. Merrill, 119 N.H. 647 (1979). Harriman implicitly acknowledges that fact, insofar as he does not object to VRM's motion to the extent it seeks dismissal of those claims. Consequently, Harriman's claims against VRM for intentional infliction of emotional distress (count four) and negligent infliction of emotional distress (count five) must also be dismissed for failure to state a claim.

## Conclusion

For the foregoing reasons, as well as those set forth in defendant's legal memorandum, Vendor Resource Management, Inc.'s motion to dismiss all claims asserted against it (document no. 16) is granted.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

February 20, 2015

cc:  Donna-Marie Cote, Esq.
     John B. Schulte, Esq.
     James Q. Shirley, Esq.
     Emily M. Doherty, Esq.
     Wilfred J. Desmarais, Jr., Esq.

14